[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

PK

**RECEIVED**

### UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

EC OCT 18 2018

**THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT**

Marina Cuautle )
                 )
                 )
_____ )
                 )
(Name of the plaintiff or plaintiffs) )
                 )
        v.       )
                 )
Hollywood Casino Joliet )
a/k/a HC Joliet, LLC )
                 )
_____ )
                 )
(Name of the defendant or defendants) )

1:18-cv-06995
Judge Charles P. Kocoras
MagistrateJudge Sidney I. Schenkier

## COMPLAINT OF EMPLOYMENT DISCRIMINATION

1. This is an action for employment discrimination.

2. The plaintiff is Marina Cuautle _____ of the

county of Will _____ in the state of Illinois _____.

3. The defendant is Hollywood Casino Joliet _____, whose

street address is 777 Hollywood Blvd. _____.

(city) Joliet (county) Will (state) IL (ZIP) 60436

(Defendant's telephone number) (888) – 436 – 7737 _____

4. The plaintiff sought employment or was employed by the defendant at (street address)

777 Hollywood Blvd. _____ (city) Joliet

(county) Will (state) IL (ZIP code) 60436

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

5. The plaintiff [*check one box*]

    (a) ☐     was denied employment by the defendant.

    (b) ☐     was hired and is still employed by the defendant.

    (c) ☑     was employed but is no longer employed by the defendant.

6. The defendant discriminated against the plaintiff on or about, or beginning on or about,

    (month) July , (day) , (year) 2015 .

7.1 *(Choose paragraph 7.1 or 7.2, do not complete both.)*

      (a) The defendant is not a federal governmental agency, and the plaintiff [*check

      *one box*] ☐ *has not*     filed a charge or charges against the defendant
               ☑ *has*

asserting the acts of discrimination indicated in this complaint with any of the following

government agencies:

   (i)     ☐ the United States Equal Employment Opportunity Commission, on or about

       (month) (day) (year) .

   (ii)     ☑ the Illinois Department of Human Rights, on or about

       (month) 11 (day) 03 (year) 2016 .

  (b) If charges *were* filed with an agency indicated above, a copy of the charge is

attached.    ☑ YES.     ☐ NO, **but plaintiff will file a copy of the charge within 14 days**.

It is the policy of both the Equal Employment Opportunity Commission and the Illinois

Department of Human Rights to cross-file with the other agency all charges received. The

plaintiff has no reason to believe that this policy was not followed in this case.

7.2     The defendant is a federal governmental agency, and

      (a) the plaintiff previously filed a Complaint of Employment Discrimination with the

      defendant asserting the acts of discrimination indicated in this court complaint.

2

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

☐     Yes (month)_____ (day)_____ (year)_____

☐     No, did not file Complaint of Employment Discrimination

(b)    The plaintiff received a Final Agency Decision on (month)_____

(day)_____ (year)_____.

(c)    Attached is a copy of the

(i) Complaint of Employment Discrimination,

☐ YES    ☐ NO, but a copy will be filed within 14 days.

(ii) Final Agency Decision

☐ YES    ☐ NO, but a copy will be filed within 14 days.

8.    *(Complete paragraph 8 only if defendant is not a federal governmental agency.)*

(a)☐    the United States Equal Employment Opportunity Commission has not issued

a *Notice of Right to Sue.*

(b)☑    the United States Equal Employment Opportunity Commission has issued a

*Notice of Right to Sue*, which was received by the plaintiff on

(month)___8_____ (day)_14___ (year)_2018___ a copy of which

*Notice* is attached to this complaint.

9.    The defendant discriminated against the plaintiff because of the plaintiff's [*check only those that apply*]:

(a)☐    Age (Age Discrimination Employment Act).

(b)☐    Color (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

3

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

(c)☐ Disability (Americans with Disabilities Act or Rehabilitation Act)

(d)☑ National Origin (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(e)☐ Race (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(f)☐ Religion (Title VII of the Civil Rights Act of 1964)

(g)☐ Sex (Title VII of the Civil Rights Act of 1964)

10. If the defendant is a state, county, municipal (city, town or village) or other local governmental agency, plaintiff further alleges discrimination on the basis of race, color, or national origin (42 U.S.C. § 1983).

11. Jurisdiction over the statutory violation alleged is conferred as follows: for Title VII claims by 28 U.S.C.§1331, 28 U.S.C.§1343(a)(3), and 42 U.S.C.§2000e-5(f)(3); for 42 U.S.C.§1981 and §1983 by 42 U.S.C.§1988; for the A.D.E.A. by 42 U.S.C.§12117; for the Rehabilitation Act, 29 U.S.C. § 791.

12. The defendant [*check only those that apply*]

(a)☐ failed to hire the plaintiff.

(b)☐ terminated the plaintiff's employment.

(c)☐ failed to promote the plaintiff.

(d)☐ failed to reasonably accommodate the plaintiff's religion.

(e)☐ failed to reasonably accommodate the plaintiff's disabilities.

(f)☑ failed to stop harassment;

(g)☑ retaliated against the plaintiff because the plaintiff did something to assert rights protected by the laws identified in paragraphs 9 and 10 above;

(h)☐ other (specify):_____

_____

4

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

_____

_____

_____

_____

13.    The facts supporting the plaintiff's claim of discrimination are as follows:

_____See additional pages._____

_____

_____

_____

_____

_____

14.    **[AGE DISCRIMINATION ONLY]** Defendant knowingly, intentionally, and willfully discriminated against the plaintiff.

15.    The plaintiff demands that the case be tried by a jury. ☐ YES    ☐ NO

16.    THEREFORE, the plaintiff asks that the court grant the following relief to the plaintiff [*check only those that apply*]

(a) ☐    Direct the defendant to hire the plaintiff.

(b) ☐    Direct the defendant to re-employ the plaintiff.

(c) ☐    Direct the defendant to promote the plaintiff.

(d) ☐    Direct the defendant to reasonably accommodate the plaintiff's religion.

(e) ☐    Direct the defendant to reasonably accommodate the plaintiff's disabilities.

(f) ☑    Direct the defendant to (specify): back pay from the date discrimination occurred to the date the harm suffered is redressed and for loss of fringe benefits.

5

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

This complaint is based on various incidents of discrimination, defamation of character (both privately & publicly), harassment and hostile working conditions from the Hollywood Casino because of my Mexican origin. The casino handbook outlines certain policies and procedures that I feel were not followed equally amongst me and other "non-Mexican" origin employees in the same position. I was treated differently because of my natural origin. I was mistreated for "forced outs", have been skipped over for my required timely breaks, given points for being tardy and absences that were held to a different standard then other dealers and not according to company policy, disrespected publicly and privately, when I was being harassed by angry customers I was not protected or backed up by the casino and I was reprimanded and retaliated against for speaking up.

- **March 1, 2016**: I had been skipped over previously on this day. I was in for an hour and 20 minutes when I saw other dealers that were at the table for only 40 minutes (Diane Sutton) but were given breaks before me. When I called to the supervisor to let him know he began arguing with me in front of a table full of customers that I was mistaken and had really only been in for 40 minutes, and also accusing me of looking away from my table to call the supervisor. I asked to be tapped out immediately and made a complaint to the Casino Manager (John Allison). He called surveillance to check and it was verified that I was telling the truth. This has been a reoccurring event for me to get skipped over for breaks; I feel it is being done intentionally.

- **March 15, 2016**: I submitted a formal written complaint to HC Human Resources Department because the harassment and discrimination was still happening. This meeting consisted of myself, the Vice President of the casino (Robbie Butler), Kelly Rose and Pam Malone, it was suggested by Robbie Butler that I keep documentation of future incidents. After this time the retaliation got more severe and frequent write-ups. Other than the standard write-ups for attendance I started getting extra write-ups as a form of retaliation after submitting my formal written complaint.

- **March 21, 2016**: I had just finished a round of dealing at a Roulette table that was in high limits, after I returned from my 20 minute break the supervisor told me he needed another roulette dealer and I was to return to the table I just left. Other roulette dealers were also returning from break but they are given the choice to return to the same game whereas I was not given the choice, but simply told to do it.

- **April 11, 2016**: I came back from break at 7:00 p.m. and gave Jim Benda a break from High card flash. At 7:40 Jim Benda went on break again and I was skipped, when Susan Cooper took over the rubber band she put me two times at the $5.00 worst table.

- **April 12, 2016**: I was rotated to different tables, and I was also put two times at the worse $5.00 table one of the times was 12:00 a.m. – 1:00 a.m. then Susan Cooper again sent me to for the third time.

- **April 17, 2016**: Patrick Clarke was running the rubber band, I was on break before Brooke K. on the following break Brooke and I were at the same break then for the next break Patrick sent her on break before me (a clear proof of how the supervisors manipulate the rubber band).

- **April 19, 2016**: Around 9:00 p.m. or so, the supervisor Douglas Gervais got very close to me and whispered to but the cards in half (they were asking me to do this because the player was on a winning streak and doing this would change up the flow of the cards) they wanted his winning streak to end. I didn't want to make it so obvious because the player could become very angry, I knew the supervisor would not back me up or protect me so I was not comfortable doing this because it was not part of our training manual. The cameras would see that I did this but not hear that it came from the supervisor, I felt like I was being set up. I did not follow his direct instruction but did however cut the deck much more than normal to make it not so obvious to the player. I voiced my concern to my supervisor. I was tapped out for break by Scott and they also instructed him to do the same thing. I received a write up for not following the order of my supervisor even though it was not part of our training manual. I asked the IGB (Illinois Gaming Board) about this incident but was never given any feedback.

- **May 9, 2016**: I got my first break at 10:20 p.m., I was sent to the Mississippi Stud table at 10:40, Gary tapped me out to go to the Roulette table at 11:40, Gary was sent on break again. I was skipped again by Susan Cooper and I was left on the table for an hour and twenty dealing to a high roller while everyone else were taking breaks every 20 – 40 minutes.

- **May 9, 2016**: At 4:20 a.m. a young guy was swearing at my Roulette table, saying "fuck you, fuck me" and rushing me to spin the ball when he didn't even had a minimum bet on the table yet. I did notify the supervisor (Douglas Gervais) he said he only heard it once and he did nothing about it. When this was done to another dealer of non-Mexican origin they would ask the player to leave or tell them to stop their behavior, they did nothing when I was being verbally abused by players.

- **July 8, 2016**: I was taken out of the worst $5.00 table because I was called to go to the office when I came back I was sent back to the same table. The supervisor, Richard, needed a Baccarat dealer instead of sending me he sent me right back to get the dealer that had just replaced me on the $5.00 table just to retaliate towards me. In all this process we had to burn three cards, making the players angry and I had to deal with that, I did speak to Al S. about this issue.

- **July 27, 2016**: When I arrived to work Patrick Clarke was running the rubber band, he sent Michelle and Oscar on break first putting me always on the bottom of the list. As always he claims that it was because I'm the last one to arrive, which is not true. This particular day clearly proves that no matter what I was always put on the bottom of the list.

- **September 25, 2016**: I was tardy due to an uncontrollable situation with public transportation from Chicago causing me to be late for my shift. I was previously told that as of Sept. 18 I would drop 2 points so I should have been ok with this tardy. However, I was written up and issued double points for this incident. Another dealer, Angela Miller (non-Mexican origin), was given September 17 & 18, 2016 off to attend her brother's wedding and arranged her schedule so she would not get any points against her attendance. This privilege was never offered to minorities (discrimination). This can be proved by requesting the Cronox record of her attendance.

- It is known that being in high limits or on a $5.00 game are the worst tables to deal at. Dealing in high limits can be very stressful due to the amounts of money players are betting and the pressure, when I am overworked without my timed breaks that make me more susceptible to making mistakes which could potentially cause a write up to be placed in my file. Again, I feel this is intentional as if they are setting me up to fail. Being

- overworked at any table can be difficult and cause dealers to make mistakes. Too many mistakes with write ups would be cause for termination. The $5.00 tables are looked at as being almost a punishment for dealers for a variety of reasons, and it seems that they are very often scheduling me for those tables. We should all have to take turns on the harder tables since we are all experienced at the same games, the supervisors should not be playing favoritism.

- I'm always put on the back of the list, other dealers are working 20 or 40 minutes on and I work the longest times. There have been many times when my name is not even on the break list. When I bring this to the attention of the supervisor, John Allison, he agreed but then switched his story saying that I'm wrong.

- On one occasion I asked Joe Watson if we were all doing 80 minutes on, he brought this up to Dough Gervais and I was tapped out for break but was then yelled at when I returned saying that I had only been on for 60 minutes, not 80. It was a mistake between the supervisors but makes their creditability more than mine.

- When I ask the supervisors about the rotations for breaks to ensure that I am not being skipped over I get called to the office and reprimanded for asking the supervisors and distracting them from their work. In many cases we are slow on the floor when it is later in the evening and less busy. It should not be the responsibility of the dealers to keep track of our breaks.

- Another incident when I just simply asked if she (Susan Cooper) could find out when I was scheduled for a break because I needed to use the restroom but did not want to say this in front of the customers. I was lectured at my table in front of the players that it wasn't my time yet for a break then she documented something negative about me on the computer. I found out later when I was called to the office by management to discuss this incident that they considered it to be my mistake for not telling her in front of the customers that I needed to use the washroom.

- It is common for any dealer to make a mistake from time to time, Susan Cooper makes humiliating comments to me in front of the customers "come on, you have been a dealer for a long time".

- When we went to dealer school HC provides us with a training manual, one of the rules is regarding changing color chips during the game. One incident with myself and Susan Cooper occurred when a player was continuously asking me to "check change" during the game. I very nicely explained that it was against the casino rules to do this and I gave him the explanation. The player accused me of lying and I called my supervisor (Susan Cooper) over and her response was for me to "give the customer what he wanted", she did not back me up at all and made me look completely incompetent in front of the customer. My fear since they are always finding fault in my every move was that I would be reprimanded for not following the casino procedure for "check changing". When I went out for my break time I told her that the training manuals should be adjusted. She got angry and told me to go to the office with her and I was accused of displaying poor customer service.

- Just a few short weeks later a similar situation occurred when I was working at a table in Susan Cooper's pit area. She made a mistake and overfilled my table tray, and then a customer wanted to color up before exiting the table. Following Ms. Cooper's previous instructions I gave the customer what she wanted creating even more of an overflow of chips on my table tray. As soon as the customer walked away I was reprimanded for coloring the player up and creating the overflow of chips in my table tray stating that I should have known better being the "experienced dealer" that I was. It was a losing situation for me no matter what I did. I was told one thing one day but then contradicted the same instruction from the same supervisor the next day.

- A specific supervisor (Patrick) will manipulate the rubber band process for breaking dealers to give their favor people better breaks and this is often at my expense. They will work it out where certain dealers are given breaks together or after only a 40 minute run but I pay the price and work longer on the tables for their benefit.

- This same supervisor will also put them on the very last break of the shift at 12:20 a.m. for the purpose of them to just not return to the floor at 1:00 to finish out the shift to 1:30. This allows these two girls to basically get the whole last hour of their shift to just hang out waiting to clock out. I have witnesses (other dealers) that will collaborate with me on this fact. Because of the fear of retaliation against them I'm not including their names in this statement.

- One of the issues we are taught as part of dealer school is to recognize when a player is cheating, this is illegal. Surveillance cameras are on us all the time watching our every move as well as the players. It should be applauded when a dealer calls a possible cheating situation to the attention of the supervisors and dealers have been written up for not catching cheaters. I did notice a player one night not following the clearly stated rules of the game and did bring this to the attention of my supervisor, they did nothing.

- I was scheduled to work overtime on New Year's Eve (this was a regular scheduled day off for me). They scheduled me for the holiday from 12:00 a.m. to 5:30 a.m. I did not schedule any holiday plans for myself with family or friends because it was mandatory that I had to work. I accepted it as a good overtime opportunity. Earlier in the work week I was "forced out" on my regular scheduled day because they knew I would pick up the extra hours for the holiday.

All of these situations that I have described have created a very hostile work environment for not only me but other dealers as well. It is wrong that I was going to my work place with a knot in my stomach on a daily basis, wondering what trouble I will have today, being humiliated, bullied and treated like a child in front of not only customers but co-workers and other supervisors. HC claims they have an open door policy and pride themselves on customer service; however, when I bring things to their attention they are rude and disrespectful to me. I work longer than most other dealers and often get skipped over for my breaks or taken advantage of so other dealers get a better break but when I bring it to their attention I basically get in trouble. I feel like either way I loose, and I was always fearful of retaliation. There was no equal treatment there, supervisors had their favorite dealers and customers and did not follow company protocol the same for everyone. I have always prided myself on a good strong work ethic and have worked hard my entire life. This whole experience has caused me great pain and suffering, emotional turmoil as well as monetary losses. It continues to be a burden to me today.

EEOC Form 161 (11/16)  **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | **Marina Cuautle**<br>**1711 Prairie Wind Dr**<br>**Joliet, IL 60435** | From: | **Chicago District Office**<br>**500 West Madison St**<br>**Suite 2000**<br>**Chicago, IL 60661** |
|---|---|---|---|

| | *On behalf of person(s) aggrieved whose identity is*<br>*CONFIDENTIAL (29 CFR §1601.7(a))* | |
|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **21B-2017-00237** | **Daniel Lim,**<br>**State & Local Coordinator** | **(312) 869-8082** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[ ] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[X] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -

*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*Julianne Bowman/SP*                                      8/14/18

Enclosures(s)                          **Julianne Bowman,**                    *(Date Mailed)*
                                       **District Director**

cc:

HC JOLIET, LLC (HOLLYWOOD CASINO)
c/o Steven W. Suflas, Esq.
Ballard Spahr, LLP
210 Lake Drive East, Suite 200
Cherry Hill, NJ 08002

(13)

| CHARGE OF DISCRIMINATION | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974: See Privacy act statement before completing this form. | ☒ IDHR | 2017CF0986 |
| # 17W1103.04 | ☐ EEOC | |

## Illinois Department of Human Rights and EEOC

| NAME OF COMPLAINANT (Indicate Mr. Ms. Mrs.) | | TELEPHONE NUMBER (Include area code) |
|---|---|---|
| Marina Cuautle | | (815) 630-8496 |
| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
| 1711 Prairie Wind Dr. | Joliet, IL 60435 | |

| | | M | D | Y |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (IF MORE THAN ONE LIST BELOW)

| NAME OF RESPONDENT | NUMBER OF EMPLOYEES, MEMBERS 15+ | TELEPHONE NUMBER (Include area code) |
|---|---|---|
| HC Joliet, LLC (Hollywood Casino) | | (815) 744-9400 |
| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
| 777 Hollywood Blvd. | Joliet , IL 60436 | Will |

| CAUSE OF DISCRIMINATION BASED ON: | DATE OF DISCRIMINATION EARLIEST (ADEA/EPA) LATEST (ALL) |
|---|---|
| National Origin        Retaliation | 5/16               9/25/16 |
| | ☐ CONTINUING ACTION |

THE PARTICULARS OF THE CHARGE ARE AS FOLLOWS:

I.    A.    **ISSUE/BASIS**
           UNEQUAL TERMS AND CONDITIONS OF EMPLOYMENT- FROM MAY 2016 AND CONTINUING UNTIL SEPTEMBER 25, 2016, DUE TO NATIONAL ORIGIN, MEXICO

    B.    **PRIMA FACIE ALLEGATIONS**

      1.  My national origin is Mexico.

      2.  I was hired on August 14, 2012. My performance as a table games dealer met Respondent's expectations.

Page 1 of 3

| I also want this charge filed with the EEOC. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | SUBSCRIBED AND SWORN TO BEFORE ME THIS 3rd DAY OF November, 2016 X _____ NOTARY SIGNATURE |
|---|---|

OFFICIAL SEAL
RAQUEL C GUERRA
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:05/17/20

NOTARY STAMP

X _Marina Cuautle_  11/03/16
SIGNATURE OF COMPLAINANT          DATE

I declare under penalty that the foregoing is true and correct I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief

EEO-5 FORM (Rev. 11/09-INT)

Charge Number: 2017CF0986
Complainant: Marina Cuautle
Page 2 of 3

3. From May 2016 and continuing through September 25, 2016, I was subjected to unequal terms and conditions of employment in that I was often passed over for breaks were scheduled, assigned the worst tables, forced to work on scheduled days off, and if a player complained about me because I followed Respondent's policy, Respondent would side with the player.

4. Similarly situated employees whose national origin was not Mexico, were treated more favorably under similar circumstances.

II.  A.  ISSUE/BASIS
UNEQUAL TERMS AND CONDITIONS OF EMPLOYMENT- FROM MAY 2016 AND CONTINUING UNTIL SEPTEMBER 25, 2016, IN RETALIATION FOR HAVING OPPOSED UNLAWFUL DISCRIMINATION

B.  PRIMA FACIE ALLEGATIONS

1. On March 15, 2016, after various verbal complaints, I engaged in a protected activity when I submitted a formal discrimination complaint with Kelly Myers, Humans Resources Manager, against various supervisors.

2. Beginning May 2016, I was forced to punch in prior to my shift start so that I would walk into the casino floor with a group of co-workers rather than by myself and I was denied days off by management.

3. The adverse action closely followed my protected activity within such a period of time as to raise an inference of retaliatory motivation.

III.  A.  ISSUE/BASIS
WRITTEN REPRIMAND- JUNE 25, 2016, IN RETALIATION FOR HAVING OPPOSED UNLAWFUL DISCRIMINATION

B.  PRIMA FACIE ALLEGATIONS

1. On March 15, 2016, after various verbal complaints, I engaged in a protected activity when I submitted a formal discrimination complaint with Kelly Myers, Humans Resources Manager, against various supervisors.

2. On June 25, 2016, I was issued a written reprimand by Respondent issuing me two attendance points due to an absence.

Charge Number: 2017CF0986
Complainant: Marina Cuautle
Page 3 of 3

      3. The adverse action closely followed my protected activity within such a period of time as to raise an inference of retaliatory motivation.

IV.   A.   ISSUE/BASIS
          DISCHARGE- SEPTEMBER 25, 2016 IN RETALIATION FOR HAVING OPPOSED UNLAWFUL DISCRIMINATION

     B.   PRIMA FACIE ALLEGATIONS

       1. On March 15, 2016, after various verbal complaints, I engaged in a protected activity when I submitted a formal discrimination complaint with Kelly Myers, Humans Resources Manager, against various supervisors.

       2. On September 25, 2016, I was discharged by John Allison, Manager. The reason given for my discharge was that I had accumulated 9 attendance occurrences which were grounds for dismissal.

       3. The adverse action closely followed my protected activity within such a period of time as to raise an inference of retaliatory motivation.

       DCK

| CHARGE OF DISCRIMINATION | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974: See Privacy act statement before completing this form. | ☒ IDHR | |
| # 17W1103.04 | ☐ EEOC | 2017CF0986 |

## Illinois Department of Human Rights and EEOC

| NAME OF COMPLAINANT (indicate Mr. Ms. Mrs.) | | TELEPHONE NUMBER (include area code) | |
|---|---|---|---|
| **Marina Cuautle** | | (815) 630-8496 | |
| STREET ADDRESS | CITY, STATE AND ZIP CODE | | DATE OF BIRTH |
| 1711 Prairie Wind Dr. | **Joliet, IL 60435** | | M    D    Y |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (IF MORE THAN ONE LIST BELOW)

| NAME OF RESPONDENT | NUMBER OF EMPLOYEES, MEMBERS 15+ | TELEPHONE NUMBER (include area code) | |
|---|---|---|---|
| HC Joliet, LLC (Hollywood Casino) | | (815) 744-9400 | |
| STREET ADDRESS | CITY, STATE AND ZIP CODE | | COUNTY |
| 777 Hollywood Blvd. | **Joliet , IL 60436** | | **Will** |

| CAUSE OF DISCRIMINATION BASED ON: | | DATE OF DISCRIMINATION EARLIEST (ADEA/EPA) LATEST (ALL) |
|---|---|---|
| | | 5/16                      9/25/16 |
| **National Origin          Retaliation** | | ☐ CONTINUING ACTION |

THE PARTICULARS OF THE CHARGE ARE AS FOLLOWS:

I.   A.   **ISSUE/BASIS**
          **UNEQUAL TERMS AND CONDITIONS OF EMPLOYMENT- FROM**
          **MAY 2016 AND CONTINUING UNTIL SEPTEMBER 25, 2016,**
          **DUE TO NATIONAL ORIGIN, MEXICO**

     B.   **PRIMA FACIE ALLEGATIONS**

          1. My national origin is Mexico.

          2. I was hired on August 14, 2012. My performance as a table games dealer
             met Respondent's expectations.

**Page 1 of 3**

| I also want this charge filed with the EEOC. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | SUBSCRIBED AND SWORN TO BEFORE ME THIS 3rd DAY OF November, 2016 |
|---|---|
| | X _____ NOTARY SIGNATURE |
| OFFICIAL SEAL RAQUEL C GUERRA NOTARY PUBLIC - STATE OF ILLINOIS MY COMMISSION EXPIRES:05/17/20 NOTARY STAMP | X Marina Cuautle  11/03/16 SIGNATURE OF COMPLAINANT          DATE |
| | I declare under penalty that the foregoing is true and correct I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief |

EEO-5 FORM (Rev. 11/09-INT)

Charge Number: 2017CF0986
Complainant: Marina Cuautle
Page 2 of 3

3. From May 2016 and continuing through September 25, 2016, I was subjected to unequal terms and conditions of employment in that I was often passed over for breaks were scheduled, assigned the worst tables, forced to work on scheduled days off, and if a player complained about me because I followed Respondent's policy, Respondent would side with the player.

4. Similarly situated employees whose national origin was not Mexico, were treated more favorably under similar circumstances.

II. A. ISSUE/BASIS
UNEQUAL TERMS AND CONDITIONS OF EMPLOYMENT- FROM MAY 2016 AND CONTINUING UNTIL SEPTEMBER 25, 2016, IN RETALIATION FOR HAVING OPPOSED UNLAWFUL DISCRIMINATION

B. PRIMA FACIE ALLEGATIONS

1. On March 15, 2016, after various verbal complaints, I engaged in a protected activity when I submitted a formal discrimination complaint with Kelly Myers, Humans Resources Manager, against various supervisors.

2. Beginning May 2016, I was forced to punch in prior to my shift start so that I would walk into the casino floor with a group of co-workers rather than by myself and I was denied days off by management.

3. The adverse action closely followed my protected activity within such a period of time as to raise an inference of retaliatory motivation.

III. A. ISSUE/BASIS
WRITTEN REPRIMAND- JUNE 25, 2016, IN RETALIATION FOR HAVING OPPOSED UNLAWFUL DISCRIMINATION

B. PRIMA FACIE ALLEGATIONS

1. On March 15, 2016, after various verbal complaints, I engaged in a protected activity when I submitted a formal discrimination complaint with Kelly Myers, Humans Resources Manager, against various supervisors.

2. On June 25, 2016, I was issued a written reprimand by Respondent issuing me two attendance points due to an absence.

Charge Number: 2017CF0986
Complainant: Marina Cuautle
Page 3 of 3

    3. The adverse action closely followed my protected activity within such a period of time as to raise an inference of retaliatory motivation.

IV.  A.    **ISSUE/BASIS**
        **DISCHARGE- SEPTEMBER 25, 2016 IN RETALIATION FOR HAVING OPPOSED UNLAWFUL DISCRIMINATION**

    B.    **PRIMA FACIE ALLEGATIONS**

    1. On March 15, 2016, after various verbal complaints, I engaged in a protected activity when I submitted a formal discrimination complaint with Kelly Myers, Humans Resources Manager, against various supervisors.

    2. On September 25, 2016, I was discharged by John Allison, Manager. The reason given for my discharge was that I had accumulated 9 attendance occurrences which were grounds for dismissal.

    3. The adverse action closely followed my protected activity within such a period of time as to raise an inference of retaliatory motivation.

    DCK

**STATE OF ILLINOIS**
**DEPARTMENT OF HUMAN RIGHTS**

**IN THE MATTER OF:**

MARINA CUAUTLE,

           COMPLAINANT,        CHARGE NO.  2017CF0986
                                         EEOC NO.    21BA70237

AND

HC JOLIET, LLC (HOLLYWOOD
CASINO),

           RESPONDENT.

## NOTICE OF DISMISSAL
## FOR LACK OF SUBSTANTIAL EVIDENCE

Marina Cuautle                         Steven W. Suflas
1711 Prairie Wind Drive            Ballard Spahr, LLP
Joliet, IL 60435                    210 Lake Drive East
                                    Suite 200
                                    Cherry Hill, NJ 08002

DATE OF DISMISSAL: **January 16, 2018**

1.    YOU ARE HEREBY NOTIFIED that based upon the enclosed investigation report, the Department has determined that there is NOT substantial evidence to support the allegation(s) of the charge. Accordingly, pursuant to Section 7A-102(D) of the Act (775 ILCS 5/1-101 et seq.) and the Department's Rules and Regulations (56 Ill. Adm. Code. Chapter II, §2520.560) the charge is HEREBY DISMISSED.

2.    If Complainant disagrees with this action, Complainant may:

    a) Seek review of this dismissal before the Illinois Human Rights Commission (Commission), 100 West Randolph Street, Suite 5-100, Chicago, Illinois, 60601, by filing a "Request for Review" with the Commission by the request for review filing date below. Respondent will be notified by the Commission if a Request for Review is filed.

**REQUEST FOR REVIEW FILING DEADLINE DATE: April 23, 2018**

    Or, Complainant may:

    b) Commence a civil action in the appropriate state circuit court within ninety (90) days after receipt of this Notice. A complaint should be filed in the circuit court in the county where the civil rights violation was allegedly committed.

**Page 2**
**Notice of Dismissal for Lack of Substantial Evidence**
**Charge No. 2017CF0986**

**If you intend to exhaust your State remedies, please notify the Equal Employment Opportunity Commission (EEOC) immediately. The EEOC generally adopts the Department's findings.** The Appellate Courts in <u>Watkins v. Office of the State Public Defender</u>, ___ Ill.App.3d ___, 976 N.E.2d 387 (1st Dist. 2012) and <u>Lynch v. Department of Transportation</u>, ___ Ill.App.3d ___, 979 N.E.2d 113 (4th Dist. 2012), have held that discrimination complaints brought under the Illinois Human Rights Act ("IHRA") against the State of Illinois **in the Illinois Circuit Court** are barred by the State Lawsuit Immunity Act. (745 ILCS 5/1 et seq.). Complainants are encouraged to consult with an attorney prior to commencing a civil action in the Circuit Court against the State of Illinois.

**PLEASE NOTE: The Department cannot provide any legal advice or assistance. Please contact legal counsel, your city clerk, or your county clerk with any questions.**

3.  Complainant is hereby notified that the charge(s) will be dismissed with prejudice and with no right to further proceed if a timely request for review is not filed with the Commission, or a timely written complaint is not filed with the appropriate circuit court.

4.  If an EEOC charge number is cited above, this charge was also filed with the Equal Employment Opportunity Commission (EEOC). If this charge alleges a violation under Title VII of the Civil Rights Act of 1964, as amended, or the Age Discrimination in Employment Act of 1967, Complainant has the right to request EEOC to perform a Substantial Weight Review of this dismissal. Please note that in order to receive such a review, it must be requested in writing to EEOC within fifteen (15) days of the receipt of this notice, or if a request for review is filed with the Human Rights Commission, within fifteen days of the Human Rights Commission's final order. Any request filed prior to your receipt of a final notice WILL NOT BE HONORED. Send your request for a Substantial Weight Review to EEOC, 500 West Madison Street, Suite 2000, Chicago, Illinois 60661. Otherwise, EEOC will generally adopt the Department of Human Rights' action in this case.

**PLEASE NOTE: BUILDING SECURITY PROCEDURES PRESENTLY IN PLACE DO NOT PERMIT ACCESS TO EEOC WITHOUT AN APPOINTMENT. IF AN APPPOINTMENT IS REQUIRED, CALL (312) 869-8000 OR (800) 669-4000.**

DEPARTMENT OF HUMAN RIGHTS
Janice Glenn
Acting Director

HB1509/HB59 NOD/LSE
12/16

**STATE OF ILLINOIS**
**DEPARTMENT OF HUMAN RIGHTS**
**INVESTIGATION REPORT**

| | | | |
|---|---|---|---|
| **Complainant:** | Marina Cuautle | **IDHR No.:** | 2017CF0986 |
| **Respondent:** | HC Joliet, LLC (Hollywood Casino) | **EEOC No.:** | 21BA70237 |

**Investigator:** JHC     **Supervisor:** ESK     **Date:** 01/05/18

**Issue/Basis:**                           **Finding:**

A. Unequal terms and conditions of       A. Lack of substantial evidence
    employment/national origin, Mexico

B. Unequal terms and conditions of       B. Lack of substantial evidence
    employment/retaliation

C. Written warning/retaliation              C. Lack of substantial evidence

D. Discharge/retaliation                   D. Lack of substantial evidence

**Jurisdiction:**

Alleged violation:            A & B   May 2016 – September 25, 2016
                                C   July 8, 2016 (corrected[1])
                                D   September 25, 2016

Charge filed:                                 November 3, 2016
Charge perfected:                          November 3, 2016
Amendments:                               N/A
Number of employees:                       15+

**Verified Response:**

Due:          February 10, 2017
Received:    February 9, 2017
Timely:   X   Untimely: ___         **Group Exhibit A**
If untimely, good cause shown:   Yes ___   No ___

**Employment Data:**

Through investigation, Respondent indicated that it employs approximately 60 employees. Respondent indicated that it employed approximately 79 table games dealers, of which 12 (15%) were of national origin, Mexico.

---

[1] In the instant charge, Complainant identified the date of harm as June 25, 2016; however, the investigation revealed that the harm occurred on July 8, 2016.

Charge No.: 2017CF0986
Page 2 of 19

## Uncontested Facts:

1. Respondent is a casino.
2. Complainant worked for Respondent as a table dealer.
3. There are different types of table games, which require different certifications.

## Complainant's Allegations-Count A:

Complainant, a former table games dealer for Respondent, is of national origin, Mexico. Complainant alleges that her work performance met Respondent's expectations. Complainant alleges that from May 2016, through September 25, 2016, she was subjected to unequal terms and conditions of employment because of her national origin. Complainant alleges that the unequal terms and conditions of employment consisted of being passed over for breaks; being assigned the worst tables; being forced to work on scheduled days off; and having Respondent side with clients if there were client complaints. Complainant alleges that similarly-situated employees whose national origin was not Mexico were treated more favorably under similar circumstances.

## Respondent's Defenses-Count A:

Respondent denies that Complainant was subjected to unequal terms and conditions of employment.

## Investigation Summary-Count A:

### A.   Complainant's Evidence.

1. Complainant stated that she was a table games dealer for Respondent, and that there were approximately 100 table games dealers at Respondent. Complainant stated that some dealers were full-time workers, and others were part-time workers.

2. Complainant stated that she feels she was subjected to unequal terms and conditions of employment because of her national origin, Mexico between at least May 2016 and September 25, 2016.

3. Complainant stated that typically an hour and twenty minutes after a shift starts, the supervisor will run the "rubber band," which starts the rotation of breaks for dealers. The employees are rotated through breaks after they have worked for an hour and twenty minutes. If there are extra dealers, supervisors try to get dealers extra breaks. Complainant stated that if she is not given a break during the "rubber band," then she is supposed to remind the supervisor. Complainant stated that breaks are needed because dealers experience fatigue after constantly concentrating on counting money and the game. Complainant stated that sometimes she was okay, but mostly she was passed over for breaks. Complainant stated that she did not consistently receive breaks, and that every day she was passed over for breaks. Complainant stated that if she worked five or six different tables in a period of ten hours, and she might be passed over for breaks once or twice per shift, however, she did receive some breaks throughout her shifts.

Charge No.: 2017CF0986
Page 3 of 19

4.      Complainant stated that "Americans," or employees whose national origins are non-Mexico, would complain about not receiving their breaks, however, Respondent would shut down their tables in lieu of a break. Complainant stated that she feels it is obvious that she was passed over for breaks due to her national origin. Complainant stated that Respondent thought she was whining when she brought it to someone's attention. Complainant stated that another employee, Jessica Servin (Mexico), was also left on tables for long periods of time. Complainant stated that she would see Diane Sutton (non-Mexico), Dealer, taking her breaks. Complainant stated that whomever was on any particular supervisor's good side would be treated differently.

5.      Complainant stated that in 2015, she brought up with John Allison her concerns that she was being passed over for breaks. Complainant stated that sometimes she was kept on a table for two hours before being given a break, whereas other employees whose national origin is not Mexico would be relieved after twenty minutes or forty minutes. Complainant stated that she complained about this to her supervisors every day, however, they would get mad when she complained. Complainant stated that there is no variation between the amount of time a dealer should be on one games table versus another, they should all be rotated out regularly. Complainant stated that in 2016, she made a formal complaint to Respondent's Human Resources (HR) about the situation. Complainant stated that Kelly Rose, HR Business Partner, arranged a meeting with Robbie Butler, VP, HR, and that Butler stated that she would fix the issue, however, there was no follow-up from Butler. Complainant stated that she did not state to Respondent that she felt she was discriminated against due to her national origin. Complainant stated that she did not state she was being treated differently due to her national origin because she did not want to be a target.

6.      Complainant stated that as part of the unequal terms and conditions of employment, she was sent home early approximately two times per week. Complainant stated that sometimes she was sent home first before finishing her shift, unless other employees volunteered to leave early. Complainant stated that she was sometimes called in to work on her days off. Complainant identified New Years as a day she was called into work. Complainant stated that on another occasion, everyone was made to work, however, Complainant did not identify a date for this occasion.

7.      Complainant stated that she also felt discriminated against because on three occasions, when there were player complaints on which Respondent sided with the players. She stated that some complaints occurred prior to making her statement to HR. Complainant stated that one high roller, a client, is mean to dealers. She stated that she reported one incident to Allison, and that Allison said that Complainant was attempting to get another supervisor in trouble. Complainant stated that she was following policy. Complainant did not identify a comparative who was treated differently under similar circumstances. Complainant stated that there was a video showing abuse directed toward her by a player, however, she was written up. Complainant stated that after she provided her version of events, the write-up stood.

Charge No.: 2017CF0986
Page 4 of 19

8.     Complainant stated that she was placed in the "worst" tables with the worst clients. Complainant stated that, for example, the $5 tables had clientele who would complain to the dealers. Complainant stated that supervisors placed the employees they did not like on those types of tables. Complainant stated that some, but not all, of the employees who were placed on those tables were of national origin, Mexico. Complainant stated that she would sometimes not be rotated and would be sent back to the same tables after her breaks. Complainant stated that prior to making her complaint to HR, she had worked the $5 table. Complainant stated that dealers are supposed to be rotated to different tables, but that she was always sent back to the same tables. Complainant stated that other employees whose national origin is not Mexico, also knew the games for the tables that she worked and from which she was not rotated, however, they would not be scheduled on those tables.

9.     Complainant stated that everyone was generally treated in this manner, but it was more prevalent among individuals of national origin, Mexico.

B.     **Respondent's Evidence.**

1.     Robbie Butler (non-Mexico), VP, HR, stated that Complainant was issued an employee handbook. Butler stated that the complaint procedure states that employees should follow a chain of command when making complaints, or go to HR, and that HR will subsequently investigate claims.

2.     **Exhibit E** is Respondent's Employee Guidance Manual, which includes Respondent's EEO policy. The policy states that, to give equal employment and advancement opportunities to all employees and applicants, the company makes employment decisions based on each person's performance, qualifications, and abilities, and does not discriminate based on legally protected categories. The policy states that Respondent's EEO policy covers all employment practices, including selection, job assignment, compensation, discipline, separation of employment, and access to benefits or training.

3.     John Allison (non-Mexico), Casino Manager, stated that Complainant worked as a games dealer, and that her supervisors may vary, and the employee may have 7 – 8 supervisors in a day. The job description for Table Games Dealer **(Exhibit G)** states that the position is responsible for providing a high level of customer service and promoting a positive attitude.

4.     Allison stated that Complainant was not subjected to unequal terms and conditions of employment.

5.     Allison stated that regarding breaks for employees, Respondent maintains a "rubber band," or a listing of dealer assignments. Allison stated that generally there is a person assigned to relieve the dealers, and the supervisor tracks the 3 spots, and another will track another 3. Allison stated that supervisors will set up dealers at the tables, and that they will write the dealers names down. Allison stated that if there are nine dealers, there will be three relief staff. He stated that dealers will

Charge No.: 2017CF0986
Page 5 of 19

typically be relieved after working between 20 minutes to an hour on any given table as part of standard operating procedure.

6.  **Exhibit B** is Respondent's Dealer Rubber Band SOP. The purpose of the procedure is to establish defined departmental guidelines for accurately running the dealer rubber band in a timely manner. The procedure provides examples of the number of dealers needed with given open tables, given different desired lengths of time that Respondent may want those dealers working tables. For example, if a break rotation was after an hour and twenty-minutes, then the manager would need 5 dealers for every four games. Pictures #6 and #7 of the exhibit show how Respondent may annotate and approach scenarios where employees are assigned to, or are working specific games. The "Things to Remember" page of the procedure states that supervisors running the rubber band should, "Be respectful for their break time and get them in as soon as possible." It further states that supervisors should not let the dealers run the rubber band, and that scenarios may arise where a dealer will say that they just came off a game. In that scenario, the policy states that the supervisor should politely tell the dealer that they need to replace the outgoing dealer, as "there are a lot of reasons that you may need them to take that Dealer out and you do not have time to explain the reasons."

7.  Allison stated that supervisors will try to keep dealers to working no more than an hour and twenty minutes without relieving them. Allison stated that if the employee is not relieved, they should inform the supervisor. Allison stated that usually, Respondent will try to get a relief employee. Allison stated that occasionally, employees are passed over for breaks, and that sometimes the relief worker will go to the wrong table. Allison stated that Complainant informed him maybe five or six times that she was not getting breaks, but that she would be upset about it hours after being passed over for break. He stated that he would ask Complainant to go to him immediately with the issue, as usually everyone speaks up when they are passed over for break. Allison stated that the rubber band is also determined by dealers' game knowledge, and the relief will determine where they go. Allison stated that sometimes employees are sent to other tables for relief, not break, such as if there is an issue with the other worker. Allison stated that if a table is shut down, that may throw off the rotation as well. Allison stated that Complainant did not make a complaint based on her national origin.

8.  Allison stated that there are no best or worst tables, however, some employees want to deal on particular tables. Allison stated that there is not particular table that is more complicated to handle, or that employees complain about. Allison stated that Complainant did not make a complaint to him about being placed in certain tables, and that she did not make any references to being treated differently based on her national origin. Allison stated that although Respondent will attempt to keep track of who goes on break during the shift, there is no record of when employees have taken breaks.

Charge No.: 2017CF0986
Page 6 of 19

9. Allison stated that when staffing is low, Respondent may mandate overtime. He stated that employee flexibility is a requirement in order to provide the best customer satisfaction.

10. The job description for Table Games Dealer **(Exhibit G)** states that due to the cyclical nature of the industry, employees may be required to work varying schedules to reflect the business needs of Respondent. The description states that the employee must have blackjack and roulette, and/or craps knowledge, and must be willing to learn all games offered at Respondent.

11. Allison stated that there is only one situation where Complainant kept talking during a complaint while the supervisor was there to address the problem. Allison stated that in those scenarios, Respondent does not want the employee to talk, as the supervisor is there to resolve the situation. Allison stated that Complainant only received a verbal coaching at the time. Allison stated that employees work for tips, so there is no benefit to upsetting them.

12. **Exhibit I** is Complainant's counseling record. The record shows a March 1, 2016, entry, in which Complainant complained about being "skipped," but was informed by her supervisor that she was only on the table forty minutes, where all dealers were doing one hour and twenty minutes, and Complainant was getting "tapped out" next, at an hour and twenty minutes. **Exhibit J** is Complainant's March 29, 2016, reprimand that was issued for exhibiting rude behavior. The warning states that four guests complained about Complainant for not allowing them time to bet, or calling a supervisor when asked. **Exhibit K** is Complainant's April 19, 2016, reprimand that was issued for job performance below established standards. The warning states that Complainant disregarded instruction by her supervisor on two occasions to "cut the shoe in half."

13. **Exhibit L** is a statement signed by Complainant on March 15, 2016. In her statement, Complainant states that there are a lot of issues that need to be addressed. Complainant stated that on many occasions, most recently on March 1, 2016, she has been skipped for breaks. Complainant stated that she saw Diane Sutton get relieved after 40 minutes, while Complainant was at the table for an hour and twenty minutes. She stated that her supervisor argued in front of customers that she had only been at the table for 40 minutes. Complainant stated that after she spoke with Allison, surveillance video shows that she was correct. Complainant stated that this happens to her a lot, and that when she complains to managers, they say it is a mistake. Complainant stated that when the same thing happens to someone over and over again, it is not a mistake. Complainant stated that she feels she is being set up for failure, and that another employee was terminated after they complained. Complainant continues by stating that, "I feel that they are punishing me for something, and I would like to know why? I would assume because I speak up about my breaks." Complainant makes several complaints and observations related to her dissatisfaction with how managers run the rubber band, other procedural inconsistencies and her perception that she is being skipped over for breaks. She states that supervisors manipulate the rubber band in order to give extra

breaks to their friends. She states that when "Patrick" is in charge, Diane Sutton and Mary Getys get extra breaks. Complainant states, "This is just one example of how supervisors will manipulate the rubber band, but the managers insist there is no retaliation." Complainant completes her statement by stating that, "The purpose of this statement is to fix, the abuse of power by some supervisors, towards some of the minorities, John Duskas because of his age, as he is often left on the table for two hours, and Kevin K. because people have given him a bad reputation of being a bad dealer."

14. Kelly Rose (non-Mexico), HR Business Partner, stated that on March 21, 2016, these were the same issues raise by Complainant, and that she did not complain based on her national origin. She stated that she met with Complainant, as well as Butler, and that she started an investigation. Rose stated that Complainant requested to meet with Butler regarding the customer complaint. Rose stated that Respondent reviewed surveillance video, and afterward stated that she felt she was being pushed to the limit. Complainant admitted to being wrong in the scenario with the customer.

15. Butler stated that she looked into the complaint. She stated that Complainant was upset, and needed an extra break. Complainant was unhappy with the outcome because Respondent determined the claim was unfounded. Butler stated that this occurred in the first week of April 2016. Butler stated that during the meeting, she told Complainant to tell her managers that she was being skipped for breaks.

16. Butler stated that there was an allegation that Complainant left work early, and Respondent thought that Complainant left work without permission. Butler stated that Respondent confirmed that Respondent made a mistake, and Complainant became excitable, stating, "See! See!" Butler, stated that she told Complainant that it was only an oversight.

17. Butler stated that as she was closing out her investigation on April 12, 2016, Complainant stated that minorities were "picked on." Butler stated that she mentioned the lack of breaks. Butler stated that she explained that tables were assigned by game knowledge, and Respondent closed its investigation.

18. Allison stated that Complainant did not indicate that she was being discriminated against due to her protected category.

## C. **Complainant's Rebuttal.**

1. Complainant did not provide any additional information other than what was previously identified in the Complainant's Evidence section.

## Analysis:

The investigation did not reveal that Complainant was subjected to unequal terms and conditions of employment based on her national origin. Complainant alleges that from May 2016, through September 25, 2016, she was subjected to unequal terms and conditions of employment in that she

Charge No.: 2017CF0986
Page 8 of 19

was being passed over for breaks; being assigned the worst tables; being forced to work on scheduled days off; and having Respondent side with clients if there were client complaints. Respondent denies that Complainant was being subjected to unequal terms and conditions of employment. The investigation revealed that Respondent utilizes a "rubber band" procedure to determine dealer assignment and relief. The investigation revealed that breaks varied between employees and from day to day, and were not documented by Respondent. Evidence shows that Complainant made a complaint on March 15, 2016, related to breaks and other inconsistent supervisory behavior she perceived. Respondent contends and evidence shows that Complainant was counseled and reprimanded on a couple of occasions for arguing while in the presence of supervisors and clients. Respondent contends that Complainant and other Dealers had to be flexible with their schedule. Complainant's job description states that the Table Games Dealer would have varying schedules based on business needs. Respondent denies that there are any "worst" tables, and that different employees have different preferences for tables. Complainant concedes that generally all employees were treated in the same manner, but contends that mostly "Mexican" employees were subjected to the treatment which she believed to constitute unequal terms and conditions. In her March 15, 2016, complaint, Complainant references "minorities," who are treated in this manner, including John Duskas (non-Mexico), who Complainant alleges was treated in this manner because of his age.

**Findings and Conclusion-Count A**:

A finding of lack of substantial evidence is recommended because:

Complainant failed to show and the investigation failed to reveal that Complainant was subjected to unequal terms and conditions of employment based on her national origin, Mexico. The evidence shows that Complainant filed a complaint with Respondent about breaks and inconsistent supervisory behavior she was experiencing. Respondent contends that it looked into the matter and met with Complainant and advised her to let a supervisor know immediately if she was skipped for a break. Complainant's examples of unequal terms and conditions of employment are consistent with her job description and job and schedule expectations as a table games dealer. Complainant's allegations of unequal terms and conditions of employment do not constitute materially adverse actions. It was within the scope of Respondent's authority to determine staffing needs to address customer concerns. Complainant failed to show any nexus between what she perceived as unequal terms and conditions of her employment, and her national origin, Mexico.

**Complainant's Allegations-Count B**:

Complainant, a former table games dealer for Respondent, alleges that on March 15, 2016, she engaged in a protected activity when she submitted a formal discrimination complaint with Kelly Myers, HR Manager, against various supervisors. Complainant alleges that beginning May 2016, was forced to punch in prior to her shift start time so that she could walk onto the casino floor with a group of coworkers rather than by herself, and that she was also denied days off by management. Complainant alleges that the adverse actions occurred within such a period of time from the filing of her charge to raise an inference of retaliatory motivation.

Charge No.: 2017CF0986
Page 9 of 19

## Respondent's Defenses-Count B:

Respondent denies that Complainant was retaliated against, or that she was subjected to unequal terms and conditions of employment.

## Investigation Summary-Count B:

A. **Complainant's Evidence.**

1.    See Count A, Complainant's Evidence.

2.    Complainant stated that she engaged in a protected activity on March 15, 2016, when she made a formal complaint to Respondent's Human Resources, against various supervisors.

3.    Complainant stated that employees have a six-minute window, before and after their start time to punch in and get to their tables. Complainant stated that she feels she was retaliated against because after she made her complaint to HR, Pam Malone, Manager, told her to clock in and enter the casino with her coworkers rather than by herself. Complainant stated that this was an adverse action because Respondent has a grace period, and this directive countered the Respondent's policy on clocking in to work.

4.    Complainant stated that she requested the 25th of June off from work. Complainant stated that a part-time dealer was available to cover her shift. Complainant stated that she called the scheduler, Anna Kay, who then denied her the day off. Complainant stated that no reason was given for the denial. Complainant stated that she did not complain about the denial of her request. Complainant stated that on or about July 8, 2016, she was issued discipline for accruing two attendance points after she took off work on June 25, 2016, the day she was denied as a PTO day.

5.    Complainant stated that she did not complain about feeling retaliated against because she did not think there was a point.

6.    Complainant stated that she does not know if other employees were denied days off, and is only aware of her own situation.

B. **Respondent's Evidence.**

1.    See Count A, Complainant's Evidence.

2.    Butler stated that Malone is the Casino Operations Manager. Butler stated that there is a seven-minute window before a shift at the time clock in the hallway behind the casino floor. Butler stated that all dealers are expected to sign in, then go onto the floor. Butler stated that employees then "pit," or take games tables, on a first come, first served basis. Butler stated that Malone suggested that if Complainant wanted a better assignment, then she should come in with the other

Charge No.: 2017CF0986
Page 10 of 19

>   employees so she could pit early, but that this is something that other employees do, and Complainant was not being asked to do this alone.

3.   Allison stated that Complainant was not denied time off in retaliation for opposing discrimination. Allison stated that employees have regular PTO days. If Respondent is short employees, it may deny them requested PTO time. Respondent's policy requires that employees request time off two weeks ahead of time. Allison stated that Complainant requested leave with less than two weeks out. Allison stated that because the schedule was already out, her leave was denied.

4.   Respondent's Attendance and Punctuality policy **(Exhibit F)** states that Respondent is "here to serve and entertain guests." It states that to ensure guests have a great time, Respondent requires a reliable staff so guests are not inconvenienced by staffing shortages.

5.   **Exhibit P** is Complainant's May 15, 2016, Paid Time Off request form, which shows that Complainant requested 8 PTO hours on June 25, 2016. The request is stamped as denied because the day was "full," however, it shows not receipt date or date for when the request was denied.

6.   Rose stated that Complainant did not inform Respondent that she felt she was being asked to go onto the floor with her coworkers in retaliation.

## C.   **Complainant's Rebuttal.**

1.   Complainant did not provide any additional information other than what was previously identified in the Complainant's Evidence section.

## Analysis:

The investigation did not reveal that Complainant was subjected to unequal terms and conditions of employment in retaliation for engaging in a protected activity. Complainant alleges that she engaged in a protected activity on March 15, 2016, when she made a discrimination complaint to Respondent's HR against various supervisors. Complainant alleges that from May 2016, through September 25, 2016, she was subjected to unequal terms and conditions of employment in that beginning May 2016, was forced to punch in prior to her shift start time so that she could walk onto the casino floor with a group of coworkers rather than by herself, and that she was also denied days off by management. Respondent denies that Complainant was being subjected to unequal terms and conditions of employment in retaliation. Respondent contends that although Complainant submitted a complaint in March 2016, she did not allege a protected category, and her concerns were addressed, though she was dissatisfied. Respondent contends that Complainant was asked to punch in with coworkers and walk onto the floor with them so that she would be able to pick a table on a first come/first served basis, as opposed to arriving after the grace period and having to take whatever open table remained. Respondent contends that Complainant was denied a day off on June 25, 2016, because Respondent had three staff already taking PTO on the day requested by Complainant. Respondent's attendance and punctuality policy shows that Respondent requires that employees have reliable attendance in order to avoid staffing shortages.

Charge No.: 2017CF0986
Page 11 of 19

### Findings and Conclusion-Count B:

A finding of lack of substantial evidence is recommended because:

Complainant failed to show that she engaged in a protected activity when she complained about unfair treatment in the workplace. Although Complainant identified unequal treatment against minorities, she did not specify any protected category for which she felt she was being discriminated against. Complainant's contention is that she made a complaint against supervisors, and was subsequently retaliated against by those supervisors in that they asked her to enter the casino floor with her coworkers, and that she was denied time off. By being asked to enter the floor with her coworkers, Complainant was not subjected to a materially adverse action and was not being subjected to different conditions of employment than her coworkers; she was subjected to the same conditions. Complainant alleges and it is uncontested that her leave was denied for June 25, 2016. Complainant failed to rebut Respondent's assertion that three individuals were scheduled off for PTO on that date, and she did not identify a nexus between the denial and her alleged protected activity. There is no evidence that Respondent retaliated against Complainant for engaging in a protected activity.

### Complainant's Allegations-Count C:

Complainant, a former table games dealer for Respondent, alleges that on March 15, 2016, she engaged in a protected activity when she submitted a formal discrimination complaint with Kelly Myers, HR Manager, against various supervisors. Complainant alleges that her work performance met Respondent's expectations. Complainant alleges that on July 8, 2016, she was issued a written reprimand in retaliation for engaging in a protected activity. Complainant alleges that the reason given for the written reprimand by Respondent was for accruing two attendance points due to an absence. Complainant alleges that the adverse action occurred within such a period of time from her protected activity to raise an inference of retaliatory motivation.

### Respondent's Defenses-Count C:

Respondent denies that Complainant was discriminated against, and contends that Complainant was issued discipline according to its attendance policy.

### Investigation Summary-Count C:

### A.   **Complainant's Evidence.**

   1.   See Count A and B, Complainant's Evidence.

   2.   Complainant stated that she requested the 25th of June off from work. Complainant stated that a part-time dealer was available to cover her shift. Complainant stated that she called the scheduler, Anna Kay, who then denied her the day off. Complainant stated that no reason was given for the denial. Complainant stated that she did not complain about the denial of her request.

**STATE OF ILLINOIS** )
                 ) **ss**
**COUNTY OF COOK** )                          **CHARGE NO. 2017CF0986**

## AFFIDAVIT OF SERVICE

Benetta M. Davies, deposes and states that she served a copy of the attached **NOTICE**

**OF DISMISSAL FOR LACK OF SUBSTANTIAL EVIDENCE** on each person named

below by depositing the same this 16th day of January, 2018, in the U.S. Mail Box at 100

West Randolph Street, Chicago, Illinois, properly posted for FIRST CLASS MAIL,

addresses as follows:

---

Marina Cuautle
1711 Prairie Wind Drive
Joliet, IL 60435

Steven W. Suflas
Ballard Spahr, LLP
210 Lake Drive East
Suite 200
Cherry Hill, NJ 08002

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that she verily believes the same to be true.

Benetta M. Davies

## PLEASE NOTE:

The above-signed person is responsible only for mailing these documents. If you wish a review of the findings in this case, you must complete the Request for Review form attached. Illinois Department of Human Rights staff are not permitted to discuss the investigation findings once a Notice of Dismissal has been issued.

Charge No.: 2017CF0986
Page 12 of 19

3.    Complainant stated that Angela Miller (non-Mexico), Dealer, sometimes worked as a supervisor, and that she requested off on September 16th and 17th, and was approved.

4.    Complainant stated that she feels she was retaliated against after making her statement to HR. Complainant stated that she did have write-ups related to attendance before her complaint.

5.    Complainant stated that if employees are late, ½ point is taken. If they have an unexcused absence, they have a point taken off, and two if they take off on a weekend.

6.    Complainant stated that on or about July 8, 2016, she was issued discipline for accruing two attendance points after she took off work on June 25, 2016, the day she was denied as a PTO day.

7.    Complainant stated that when she met with Butler, she was depressed and in tears. Complainant stated that the points counted against her and were not rescinded. Complainant stated that she mentioned Miller as a comparative, who had successfully requested and received time off.

8.    Complainant stated that everyone gets written up under the individual circumstances.

## B.    **Respondent's Evidence.**

1.    See Count A and B, Respondent's Evidence.

2.    Butler stated that there are three categories of discipline, including Conduct/Standards violations, attendance, and errors/internal controls.

3.    Respondent's Attendance and Punctuality policy **(Exhibit F)** states that Respondent is "here to serve and entertain guests." It states that to ensure guests have a great time, Respondent requires a reliable staff so guests are not inconvenienced by staffing shortages. Respondent maintains a no-fault attendance policy that allows employees a consistent number of attendance occurrences within a rolling 12-month period, to be used at the employees' discretion. The policy states that absences, tardiness and early-outs are combined during counseling and when taking disciplinary action, up to and including termination of employment. The policy states that each tardiness over three minutes will result in half (1/2) of an occurrence, and tardiness over two hours is one (1) occurrence. An early out requested by an employee who has worked more than half the shift results in half of an occurrence, and one occurrence if the employee has worked less than half the shift. An absence on a denied day off results in two occurrences regardless of whether or not the employee requests a PTO on that day. The policy states that if an employee received three occurrences in a rolling twelve-month period, they are issued a written notification. After seven occurrences in a rolling twelve months, they receive a second written notification. If the employee accumulates nine

Charge No.: 2017CF0986
Page 13 of 19

occurrences in the rolling twelve-month period, they are terminated. The policy states that when an hourly employee completes three consecutive months of perfect attendance, the employee's oldest single occurrence is removed from their attendance record.

4.   Rose stated that employees are advised when they accrue 3 attendance points, and 7 attendance points, after which they are discharged. She stated that after one year, the oldest points drop off if they have perfect attendance for 90-days.

5.   The job description for Table Games Dealer **(Exhibit G)** that regular attendance in conformance with Respondent's standards is essential to the successful performance of the position.

6.   Allison stated that employees have regular PTO days. Allison stated that Complainant had been disciplined for attendance violations. **Exhibit N** is Complainant's December 12, 2015, reprimand that was issued for accruing 3 or more attendance occurrences. The warning states that on December 7, 2015, Complainant reached 4.5 occurrences.

7.   **Exhibit P** is Complainant's May 15, 2016, Paid Time Off request form, which shows that Complainant requested 8 PTO hours on June 25, 2016. The request is stamped as denied, however, it shows not receipt date or date for when the request was denied.

8.   Rose stated that Complainant said that Ann, a part-timer, could have filled in for her, and she could have been given PTO, however, upon further review, she saw that three dealers were already approved for PTO, and no more could have been given out. Rose stated that another employee had resigned, and Ann had to cover those shifts. Rose stated that she informed Complainant that she could switch with someone else, however, no one was available. Rose stated that Complainant was denied taking off on June 25, 2016, however, she took that day off.

9.   Rose stated that when Complainant called off on June 25, 2016, she accrued 2 occurrences. A notification was issued to Complainant on July 8, 2016, after she accrued 8 ½ points for the June 25th violation. Rose stated that Complainant did not mention feeling that she was retaliated against.

10.  **Exhibit M** is Complainant's July 8, 2016, reprimand that was issued for accruing 7 or more attendance occurrences. The warning states that on June 27, 2016, Complainant reached 8.5 occurrences.

11.  Rose stated that Respondent has disciplined other employees under similar circumstances, at times to the point of discharge. Allison stated that between September 2015 and September 2016, there have been 37 terminations for attendance, 7 of which were for employees of national origin, Mexico. Rose stated that she is not sure if any of the employees engaged in a protected activity.

12. Respondent provided a listing of employees discharged for attendance violations from September 25, 2015, through September 25, 2016 **(Exhibit C)**. Respondent redacted the names of the discharged employees, however, the list shows the job title, termination reason, termination date, and ethnicity of the employees. One individual, a Dealer, was discharged on July 12, 2016, for absenteeism/tardiness. The list shows that this individual has engaged in a protected activity. Respondent discharged one Dealer (no protected activity) on December 29, 2015, for absenteeism/tardiness. Another Dealer (no protected activity) was discharged on April 21, 2016, for absenteeism/tardiness. Respondent discharged a total of 36 employees of different job titles for absenteeism/tardiness/points during the applicable period. Respondent did not provide responsive documents.

Staff Note:

On October 5, 2017, staff requested that Respondent provide reprimands issued to employees that were similarly-situated to Complainant who were disciplined for attendance violations during the 12-24 months preceding Complainant's June 25, 2016, reprimand. Respondent indicated that it does not track attendance related reprimands or disciplines in a central database such that it could run a report reflecting the requested information. Respondent indicated that all discipline or reprimands for attendance violations are separately maintained in each employees' personnel file, which would require Respondent to search each and every employees' file in order to gather the requested data. Respondent did not provide documents as requested.

C. **Complainant's Rebuttal.**

1. Complainant did not provide any additional information other than what was previously identified in the Complainant's Evidence section.

**Analysis:**

The investigation did not reveal that Complainant was issued a written reprimand on July 8, 2016, in retaliation for engaging in a protected activity. Complainant alleges that she engaged in a protected activity on March 15, 2016, when she made a discrimination complaint to Respondent's HR against various supervisors. Complainant alleges that on July 8, 2016, she was issued a written reprimand by Allison, in retaliation for engaging in a protected activity. The investigation revealed that Complainant was denied a day off by Respondent, June 25, 2016, and subsequently she called in and took a PTO day. Respondent denies that Complainant was retaliated against, and contends that she was issued discipline according to its attendance policy. Respondent's attendance policy states that employees will be issued discipline after three and seven occurrences. The policy states that employees who call off on a day they were denied leave will be issued two occurrence points. Evidence shows that Complainant was issued attendance points in December 2015, and that by July 8, 2016, she accrued 8.5 points after her June 25, 2016, violation. Respondent did not provide other employees receiving written reprimand, but provided a listing of employees, including dealers, who were discharged for attendance violations.

Charge No.: 2017CF0986
Page 15 of 19

## Findings and Conclusion-Count C:

A finding of lack of substantial evidence is recommended because:

Complainant failed to show that she engaged in a protected activity when she complained about unfair treatment in the workplace. Although Complainant identified unequal treatment against minorities, she did not specify any protected category for which she felt she was being discriminated against. Complainant's contention is that she made a complaint against supervisors, and was subsequently retaliated against by being issued a reprimand on July 8, 2016, after being denied a leave request, and calling off work that date. Evidence shows that prior to engaging in an alleged protected activity, Complainant had been issued discipline for attendance point accruals. Evidence shows that Complainant was issued discipline according to Respondent's progressive discipline policy. There is no evidence that Respondent retaliated against Complainant for engaging in a protected activity. Further, Complainant concedes that Respondent issues discipline to employees for attendance based on the circumstances.

## Complainant's Allegations-Count D:

Complainant, a former table games dealer for Respondent, alleges that on March 15, 2016, she engaged in a protected activity when she submitted a formal discrimination complaint with Kelly Myers, HR Manager, against various supervisors. Complainant alleges that her work performance met Respondent's expectations. Complainant alleges that on September 25, 2016, she was discharged in retaliation for engaging in a protected activity. Complainant alleges that the reason given for by Respondent for the discharge was for accruing nine attendance points. Complainant alleges that the adverse action occurred within such a period of time from her protected activity to raise an inference of retaliatory motivation.

## Respondent's Defenses-Count D:

Respondent denies that Complainant was discriminated against, and contends that Complainant was discharged according to its attendance policy.

## Investigation Summary-Count D:

### A.    Complainant's Evidence.

1.    See Count A, B and C, Complainant's Evidence.

2.    Complainant stated that on or about September 25, 2016, she was tardy and that she was supposed to receive a write-up. Complainant stated that she arrived late to work on an occasion when she went to the dentist. Complainant stated that when she was terminated, she missed the train and was two hours late.

3.    Complainant stated that on September 26, 2016, Allison informed her that she had accrued nine attendance points, and was being discharged. She stated that he informed her that two of her points would drop off on September 18, 2016. Complainant stated that she thought she was only going to receive a ½ point

Charge No.: 2017CF0986
Page 16 of 19

>       accrual. Complainant stated that she trusted what Allison said to her. Complainant
>       concedes that she was in violation of the policy.

4.      Complainant stated that she is not sure who else has been discharged, or if they had
        complained about discrimination.

## B.   **Respondent's Evidence.**

1.      See Count A, B and C, Respondent's Evidence.

2.      **Exhibit H** is Complainant's Employee Acknowledgement Form, in which
        Respondent describes employment as being at-will. The form states that the
        employee acknowledges that the employment is at-will, and that Respondent may
        terminate the employment of the employee at any time, with or without cause or
        advance notice.

3.      Allison stated that on June 28, 2016, he was in the pit with Complainant, and
        Complainant asked about points. Allison stated that he informed Complainant that
        she had 8.5 points, but Complainant stated that she was not sure that was the case.
        Allison stated that he went over everything with Complainant, and that he informed
        her that she needed to go until September 26, 216, before points would drop off,
        and another two points would drop off on December 5, 2016.

4.      Allison stated that after he had that conversation, he spoke with Rose to
        memorialize it. Allison stated that Rose then verified that the count was accurate.

5.      **Exhibit D** is and email thread between Allison and Rose, encompassing the dates
        from June 27, 2016, through June 29, 2016. On June 27, 2016, Allison asks Rose
        two questions. The first question is related to denied PTO. Complainant called in
        on "Saturday the 25th," and she had called Respondent for the day off. Allison asks
        if it is a two-point violation or more as she was previously denied the day. He stated
        that he had a similar issue in the past and was told that the most an employee could
        accrue for the two-point violation was two points, even though it fell on a day where
        the employee would accrue two points. Rose responded on June 28, 2016,
        confirming that the violation would result in only two accrued points. On June 29,
        2016, Allison contacted Rose as Complainant had asked how many points she had
        totaled, and Allison told her she had a total of 8.5 points. Allison stated that
        Complainant was unsure that was her total, and as such, Allison took her to the
        office and confirmed her points. Allison states in the communication that he
        explained to Complainant that she would have to go until September 26, 2016, or
        three months, before two points would drop off, and December 5, 2016, before
        another 2 points dropped off. The Exhibit shows that on June 27, 2016, Allison
        informed Rose that he was issuing Complainant a notice for having accrued 8.5
        attendance points, for the June 25, 2016, violation.

6.      Allison stated that Complainant accrued her 9th attendance point on September 25,
        2016, for tardiness. He stated that the Kronos system showed that Complainant
        checked in at 10:53, and her start time was 9:30. Allison stated that management

      logs the violation, then looks at the accrued points. Allison stated that Complainant was suspended pending termination. Allison stated that the department puts the documents together, then sends the packet to HR for sign-off, after which the department does the discharge.

7.      Allison stated that on September 26, 2016, Complainant was informed that she was being separated due to attendance issues. He stated that Complainant was informed that if she had questions, she could contact HR.

8.      **Exhibit O** is Complainant's September 25, 2016, termination notification that was issued for accruing 9 or more attendance occurrences. The warning states that as of September 25, 2016, Complainant reached 9 occurrences, resulting in termination of employment.

9.      Respondent provided a listing of employees discharged for attendance violations from September 25, 2015, through September 25, 2016 **(Exhibit C)**. Respondent redacted the names of the discharged employees, however, the list shows the job title, termination reason, termination date, and ethnicity of the employees. One individual, a Dealer, was discharged on July 12, 2016, for absenteeism/tardiness. The list shows that this individual has engaged in a protected activity. Respondent discharged one Dealer (no protected activity) on December 29, 2015, for absenteeism/tardiness. Another Dealer (no protected activity) was discharged on April 21, 2016, for absenteeism/tardiness. Respondent discharged a total of 36 employees of different job titles for absenteeism/tardiness/points during the applicable period.

Staff Note:

On October 5, 2017, staff requested that Respondent provide discharge documents issued for employees that were similarly-situated to Complainant who were discharged for attendance violations during the 12-24 months preceding Complainant's termination. Respondent indicated that it does not track attendance related reprimands or disciplines in a central database such that it could run a report reflecting the requested information. Respondent indicated that all discipline or reprimands for attendance violations are separately maintained in each employees' personnel file, which would require Respondent to search each and every employees' file in order to gather the requested data. Respondent did not provide documents as requested.

10.    Allison stated that Complainant did not complain after the discharge.

11.    Rose stated that Complainant called to ask about the termination, but she did not mention retaliation.

C.    **Complainant's Rebuttal.**

1.      Complainant did not provide any additional information other than what was previously identified in the Complainant's Evidence section.

Charge No.: 2017CF0986
Page 18 of 19

## Analysis:

The investigation did not reveal that Complainant was discharged on September 26, 2016, in retaliation for engaging in a protected activity. Complainant alleges that she engaged in a protected activity on March 15, 2016, when she made a discrimination complaint to Respondent's HR against various supervisors. Complainant alleges that on September 26, 2016, she was discharged by Allison, in retaliation for engaging in a protected activity. Complainant alleges that she was told that she would have attendance points drop off prior to September 25, 2016, and although Complainant concedes that she was two hours late to work, she contends that she should not have been terminated for her offense. Respondent denies that Complainant was retaliated against, and contends that Complainant was informed in June 2016, that she would have to wait until September 26, 2016, with perfect attendance, in order for two points to fall off her record. Evidence shows that in June 2016, Allison memorialized the conversation by confirming this with Allison. Respondent's attendance policy states that employees will be issued discipline after three and seven occurrences, and will be terminated after 9 occurrences. The policy states that employees with will have their oldest points in a rolling twelve-month period drop off after three months of perfect attendance. It is uncontested that on September 25, 2016, Complainant was tardy to work by two hours, and as such she was terminated before her oldest points dropped off her record. Respondent provided a listing of employees, including dealers, who were discharged for attendance violations. One of three dealers that were discharged, excluding Complainant, also engaged in a protected activity.

## Findings and Conclusion-Count D:

A finding of lack of substantial evidence is recommended because:

Complainant failed to show that she engaged in a protected activity when she complained about unfair treatment in the workplace. Although Complainant identified unequal treatment against minorities, she did not specify any protected category for which she felt she was being discriminated against. Complainant's contention is that she made a complaint against supervisors, and was subsequently retaliated against by being discharged on September 26, 2016, after being tardy to work. Evidence shows that prior to engaging in an alleged protected activity, Complainant had been issued discipline for attendance point accruals, and most recently disciplined for attendance on July 8, 2016. Evidence shows that Complainant was issued discipline according to Respondent's progressive discipline policy, and that Complainant had been informed that she would have had to wait until September 26, 2016, before her oldest points would drop off. It is uncontested that Complainant was tardy to work on September 25, 2016. There is no evidence that Respondent retaliated against Complainant for engaging in a protected activity. Further, Complainant concedes that Respondent issues discipline to employees for attendance based on the circumstances.

## Witness List:

A. Complainant (ffc)
   4930 W. Fletcher, 1st Floor
   Chicago, IL 60641
   (708) 435-1897

Charge No.: 2017CF0986
Page 19 of 19

  B. John Allison (non-Mexico), Casino Manager (ffc)
     c/o Steven W. Suflas, Esquire
     Ballard Spahr, LLP
     1735 Market Street, 51st Floor
     Philadelphia, PA 19103-7599
     (215) 665-8500

  C. Robbie Butler (non-Mexico), VP, HR (ffc)
     c/o Steven W. Suflas, Esquire
     Ballard Spahr, LLP
     1735 Market Street, 51st Floor
     Philadelphia, PA 19103-7599
     (215) 665-8500

  D. Kelly Rose (non-Mexico), HR Business Partner (ffc)
     c/o Steven W. Suflas, Esquire
     Ballard Spahr, LLP
     1735 Market Street, 51st Floor
     Philadelphia, PA 19103-7599
     (215) 665-8500

  E. Tony Medina, Complainant's Witness
     On November 3, 2017, staff mailed a letter to Medina requesting that he contact staff. On
     January 4, 2018, staff left a voicemail message for Medina requesting he contact staff.

## Exhibits:

  A. Verified Response Good Cause Determination Worksheet
  B. Respondent's Dealer Rubber Band SOP
  C. List of employees discharged for violating Respondent's attendance policy
  D. June 27, 2016, through June 29, 2016 email thread between Allison and Rose
  E. Respondent's EEO policy
  F. Respondent's Attendance & Punctuality policy
  G. Job description for Table Games Dealer
  H. Respondent's At-Will policy
  I. Complainant's counseling record
  J. Complainant's March 29, 2016, warning
  K. Complainant's April 19, 2016, warning
  L. Complainant's March 15, 2016, written statement
  M. Complainant's July 8, 2016, warning notification
  N. Complainant's December 12, 2015, warning notification
  O. Complainant's July 8, 2016, warning notification
  P. Complainant's leave denial slip